Good morning, Your Honors. My name is Eric Jacobson. I represent Teddy Roosevelt Watson. May it please the Court. Your esteemed Chief Judge Alex Kaczynski said in an opinion, losing is part of winning, to which I would say I hope that's the case. And I'd like to begin by telling you a couple of ways in which my client lost in the district court that I feel he should win here. In the first place, he was arrested and administratively processed as a parole violator on June 12, 2003, and he didn't get a Morrissey hearing for 132 days. And at the time this occurred, the law was clearly established that the maximum constitutional period that a person in his position could be held without any procedural due process was 44 days. Well, you won on that in the district court. However, the reason I'm bringing it up here, Your Honor, Judge Reimer, my client was denied any compensatory damages for the period of time following. Because despite that, his parole was revoked, and he was therefore held in custody for another 200 and some odd days. So the 134 didn't matter. So why is that wrong? That's what the district court said. And I'll tell you why it's wrong in my view. In my view, if you look at the Kerry versus Pipe, this case, it clearly states that. And then there's also a footnote in the Zimmerman case to the same effect. And I in my reply brief, I quoted a district judge who Judge Fisher, who summarized it concisely. And I'll try and do it justice. If you can trace emotional distress damages to the deprivation of your procedural due process rights, apart from the fact that you're in custody. That is, if you're if you're distressed additionally, shall we say, because you are not receiving procedural due process, that is, you're marooned in custody. You've been forgotten about in some way, or you are simply aware that there is an extra legal situation that you're in where you know you're supposed to have legal regularity and you don't have it. And you sit and you sit and you wait and you wait. Now, my client, actually, there's evidence that he was so distressed, apart from the distress he experienced having been arrested, which was that he, through a jailhouse lawyer, prepared a document in the nature of a 602 where he specifically stated, I'm here. It's been more than 44 days and my rights are being deprived. In addition, he summoned me to meet with him and asked me to file a habeas petition. And I had to explain that in the absence of exhaustion of administrative remedies, he would be a futile act. And he had been a client that had retained my services for a modest sum. And in good conscience, I couldn't tell him, well, I'll file it for you because I knew it was futile and it would be a waste of any small additional money he would pay me. So I told him we can't do that. We have to let the process play out. However, I wrote a letter asking the bureaucrats in charge, please follow your directory guidelines and get him his hearing, you know, timely. Counsel, what is the specific evidence that you would like us to look at in this record of damages that would translate to what you would like us to do? I just mentioned, Judge Graber, that if you'll and I'll reserve some time and cite to you the exact page in the record. The administrative, the sort of 602, I won't call it an administrative appeal. It's more of a 602 document Mr. Watson had authored and signed and sent out to the Sacramento Board of Parole hearings. It was called Board of Prison terms at the time. That's one piece of evidence. And that demonstrate that he was he was emotionally harmed. Well, he was conscious of the fact that he was being marooned. Well, that's right. That's irritating. But it doesn't prove the amount of damages. Well, I think that if you're asking, you know, is there a psychiatrist out there who interviewed him shortly after? I'm asking for any evidence, whether it's even him saying, you know, in a sworn declaration, I suffered this much agony and so many lost nights of sleep and I had to, you know, ask for sleeping pills, something, whether it's expert or otherwise. Well, in his deposition, as you may recall, in his deposition, Mr. Watson was asked about how he reacted to the experience of having been arrested and incarcerated for a year. He said, I was devastated. And then I think it's whether or not I believe he may have verified the complaint. I'm pretty sure he did. So there's perhaps verbiage in the complaint. But I think it's common sense. I think I called it empirical common sense that when you're in custody and you're in that situation to be. Basically, under the impression that the system is out of alignment with procedural regularity is inherently by its nature of setting. There are a number of other issues. We can't possibly reach all the issues that I've put in my brief briefing papers, Your Honor. However, I want to briefly mention that somebody could advise me in my remaining time. I do want to reserve eight minutes and 40 seconds. It should be. You should be able to see it. I do see it. Thank you, Your Honor. Let me turn to another aspect of the procedural posture, procedural due process type of issue that I think merits your close attention, which is what happened to his administrative appeal. He put in an administrative appeal immediately after the hearing, immediately being two weeks or so, three weeks maybe tops. Nine and a half months passed before he got a reply. Well, four of those were attributable to procedural defects in the briefing. Judge Reimer, there is a footnote in the complaint that goes into that. There was some attempt made, I believe possibly in direct response to this lengthy and detailed administrative appeal, to actually pass a regulation in a hasty manner. And then it was applied to my client's appeal that they confined it to six pages. And then in an abundance of caution, I resubmitted it at the six-page limit and so on. But I believe that this is basically subterfuge. There's a number of irregularities in my view in the way that the defendants and their counsel have acted in this case. We don't have time to address them all. If we had an hour for each side, we still couldn't. It was that kind of a case and not exemplary, I'm afraid, of the best side of our civil justice and civil rights justice system. But I wanted to call that part to your attention because that affected a lot of people. Nobody could go to habeas until their administrative appeals came back with a resolution. And so what they were doing was denying access to court. And we're talking about a system that had about 70,000 a year go through it. And a decent percentage of them did file administrative appeals, each one of which had their access to court denied. Judge Aldrich, you may recall I did some last minute research. You are on a panel in a procedural due process case involving a parole revocation some years ago. I believe it's Dobson or something to that effect. And in that case, the procedural due process defect in the parole revocation hearing was the mere fact that the attorney was not permitted to have a give and take with his client during the disposition phase of the revocation hearing. And you were on a panel which the majority decided that was a violation of his civil rights. I would submit in general that the kinds of things that occurred here during the hearing and even backing up into the arrest, in terms of its predicate nature, predicate acts involving what appears to be serious evidence of retaliation, is inimical to Morrissey. It's inimical to Gagnon. There was deprivations of my ability to simply counsel my client for a brief period of time. And the judge somehow came to the conclusion that I was asking for a right to delay the hearing when I was merely attempting to fully and effectively counsel my client. And that wasn't allowed. A number of irregularities. I'd like to reserve a decent amount of time in rebuttal. If there's questions, I can answer them now for another minute perhaps or two. Is Mr. Bessing questions? Why is it necessary for the district court to make an independent determination of whether this case is appropriate for class certification? I'm glad you raised that, Judge Aldrich. That's another side of this that is, in my view, a gross error on the district court's part. He ruled that my motion for class certification was out of compliance with Rule 23.3, the GOCA rule mandating that the class certification motion be made 90 days after service of the complaint. And it was made 90 days after service of the first amended complaint. I've given you some very detailed case law. This presents an opportunity to advance the law in this area. If you'll consider doing so, I think the case might have some benefit. But how could you show that you would adequately represent the class when you've admitted in your briefs here that you've missed numerous important deadlines in both the district court and this court and you've committed multiple acts of malpractice throughout the course of this litigation? I admitted to one act, but not multiple. And I would beg to differ that I'm incapable. The class issues that I've identified can be boiled down to arithmetic calculations on the part of many hundreds or thousands of people, and I'm perfectly willing and able to at such times I have the opportunity to have the case go back on a class action basis to affiliate counsel as needed to co-counsel as needed to do those acts responsibly. I hope the court will realize that as a sole practitioner there are some limitations. This is part of our system. Some of us practice independently and solo. Others do not. I would hope that there would not be a mindset that no sole practitioner can be qualified to do a class action. I pointed out the case in I believe it was Washington State where a district court judge allowed a late class certification motion to be made and noted that there were some problems with the attorney who had made some mistakes, but nevertheless granted it's the Thai farm worker case. It had some social import. So does this in my view. And I'd be privileged to work hard for the class personally and affiliate any co-counsel as necessary. I've actually had a recent conversation for what it's worth with public counsel, the public interest consortium here in Los Angeles, and they've expressed some preliminary interest. So I believe I can take care of business adequately if the court remands it. I'll reserve my minute and 45 seconds. Thank you. Good morning, Your Honors. May it please the Court. Deputy Attorney General Mitchell Risch for defendants and appellees. Plaintiff is an admitted gang member, was paroled from prison on the condition that he not associate with other gang members, was repeatedly observed associating with known gang members, and arrested for violating his parole. He then admitted at his parole revocation hearing to associating with gang members in violation of his parole, resulting in the revocation of his parole. The court should affirm the district court's partial granting of defendant's motion to dismiss and partial granting of defendant's motion for summary judgment. The court should also affirm the court's award of only nominal damages to the plaintiff on his seventh claim for relief. Counsel, I have some questions for you about the class action issue. It's a little hard to figure out exactly what all of the issues are in this case, but it does appear that we have in front of us the question of how to interpret the local rule, whether the 90 days runs from the initial complaint or whether it runs from a first amended complaint, which ordinarily can be filed as a matter of right under the federal rules if there's been no responsive pleading. So there's some questions of interpretation, and I think there also are some questions about what happens, assuming it is late, what does the district court do? Can it just deny or does it have to take a close look? And the Ninth Circuit has not ruled on either of those questions. So would you comment on how we should resolve those two issues from your perspective? As far as the first issue, the local rule provides for the filing of a class certification motion from the initial service of a complaint. I believe that the word is the original service, if I'm not mistaken. That would refer to the very first complaint, the original complaint being served. Any other rule or any other interpretation would simply allow a party to file an amended complaint approaching a deadline or passing a deadline in order to get that clock started again. In addition, so I think the appropriate interpretation is what this Court, the interpretation of this Court, which is that it must be after the initial service of the complaint. In this circumstance, the class certification motion was not filed until the case had been pending for 11 months, or 10 or 11 months was filed. And to be heard, the classification motion itself was to be heard a month and a half before the discovery deadline and three months before the trial. So under those circumstances, it was not improper for the Court to have correctly interpreted that this rule to not allow an amended complaint to restart the clock again because so much of this case had already been in motion. Now, as far as your second question. I would assume that local rules or practice or both would allow for a request for an extension of that time. Which is what the, which is what plaintiff's counsel did four months after that deadline had passed, two months after he was, after the Court had notified him that he had passed the deadline. I mean, within time, I would certainly assume that the district court would entertain a request to extend the time, if made within the time. Certainly if made within the time, yes, Your Honor. In this case, that did not happen. And I'm sorry, your second question. I'm sorry I asked such a compound question. There seems to be a different approach among the circuits as to whether, as to what a court is obliged to do when it receives a late class certification motion. Does it, can it simply reject it as untimely period? Or must it engage in a further examination of whether a class certification is appropriate? Well, in this case, plaintiff's counsel cited to a district court, the district court in Washington, which according to that case, it appears that there is no existing local rule requiring the filing of a class certification motion within a certain period of time. So that case is not applicable. However, that case did stand for the proposition that the Court does need to undertake an independent investigation of whether class certification is proper. And in that case, it held that the failure to file within the deadline is, bears on the ability of the attorney to adequately represent the class. So even under this court, so if this court would. It bears on it, but let me, in terms of the rule that our circuit should adopt, at some level it needs to be divorced from the specific facts of this case. A positive situation in which otherwise brilliant counsel, perfect counsel, with a fabulous case that really ought to have a class certified is a week late. You know, can the court say, you know, it's late, and I'm not going to certify a class action if counsel isn't perfect. Too bad. So what is the, separate from the facts of this case, what is the rule that you would ask us to adopt in examining a ruling that class certification will not be permitted or even looked at in its normal details because of a late filing? I would advocate for the analysis that, in fact, the district court did undertake, which was to determine whether, independent of the class, of the validity or the merits of class certification, to undertake in the particular circumstance whether there is cause to stray from the local rule. Simply because a class is not certified does not mean that there cannot be a class in such a case. The question is whether in this particular case there can be a class certification. So in my example, the fabulous case with the fabulous lawyer who's a week late who says, you know, I just have no excuse. It slipped my mind. I'm a week late. So there's clearly no excuse. Class certification denied because you're late. End of discussion. That's okay. Under your analysis, there being no excusable neglect on the part of the? Yeah, that's what you asked us to have a rule that says unless there's excusable neglect, that's all the district court has to do. That is the present rule, and I believe that's? The present rule where? I don't think the Ninth Circuit has a rule. That's why I'm asking you the question. Correct. Yes, I understand the hypothetical. I would submit that the rule is there for a reason, and that it's the – I would submit that it's the appropriate rule. But quite frankly, I don't know if we have to get there in this case. I'm sorry? There's a risk management discretion of a district judge, and there's all sorts of time deadlines that district judges routinely impose in every case in the central district, have done for 30 years. Correct. And so you have a framework that exists for deciding whether a district court in those circumstances when a deadline has been passed abuses his discretion in holding somebody to the letter of the time deadline. Right? Certainly. I mean, if we expand beyond this, the narrow example of a classification, but throughout the course of litigation, the trial court has wide discretion to manage its calendar. And certainly when things impact on their calendar, they can refuse to allow an enlargement of time on any number of grounds. Which I assume would be reviewed on appeal, just like we review denials of requests for continuances, or, as I say, enforcing a deadline. Yes, Your Honor. Right? I would agree. I would agree with your position. And in any event, I don't think that we need to even get there on in this case, while I appreciate that Judge Graber's hypothetical, I don't know that we need to get there on this case, because in this case it happened four months after the deadline had passed, which is a good indication that the plaintiff's counsel is incapable of representing the class. So we're not faced with a situation of a one-week delay or a one-week motion filed one week after the deadline. We're faced with a motion filed four weeks past the deadline that was to be heard one-and-a-half months before discovery cutoff, which would inevitably continue all dates in the case. And the trial court has wide discretion to manage its docket. If there — this appeal raised a tremendous amount of issues in addition to simply the classification. So if the Court has any additional questions, I'd be more than happy to entertain, rather than going through each of them one by one. Perhaps you could just briefly mention why nominal damages were appropriate on this record. Well, nominal damages were appropriate because there is no showing of harm in this case. Plaintiff was a parolee, was rearrested for violating his parole, and his parole was revoked. He did not — he was — he was reincarcerated, and the time that he was incarcerated prior to his parole revocation hearing was credited, so he did not serve any additional time in prison. While Plaintiff's counsel alleges emotional harm, there's no evidence that any emotional harm was suffered. Plaintiff has cited to no case in the Ninth Circuit involving a parolee in which a — in which compensatory damages were awarded on this — on these facts. So there simply was no abuse of discretion on the part of the trial court to refuse to award compensatory damages and award only nominal damages in this case. Anything further? I have no other questions. Okay. I don't think we have any further questions. Okay. Thank you, Your Honor. Mr. Jacobson. First of all, let me just say categorically, if Your Honors decide that because I made certain mistakes as the counsel for Mr. Watson, the prospective class, I would be more than happy to live with a ruling which either orders or strongly encourages the district court on remand that any class dimension has to be conducted by a counsel, perhaps a pro bono department of a major law firm, other than Mr. Jacobson, that would be something I can easily live with. I will have — I can still, I believe, take pride in having gotten to that point for the class. Mr. Jacobson, you referred to a case that I was involved in. I don't recall any case even similar to this one. Do you have the cite for that case? I will get you the cite in my Rule 28 letter, if I might. Otherwise, I went out of time completely. No. If you wouldn't mind, Judge Aldridge. On nominal damages, again, I believe that they can be inferred from the circumstances. It has to do with the feeling. And a parolee is no different than a non-parolee or anybody else in custody. They're human, and they don't — they can feel dismayed above and beyond their original incarceration. Very briefly, Your Honors, the public interest bar lost a member who was a friend of a friend of mine named Susan Jordan. I'd like to just dedicate my argument today to her memory. Last Friday, she lost her life. Thank you very much. All right. The matter just argued will be submitted. And we'll next hear argument in short verse row.
judges: Rymer, Graber, Aldrich